IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| RICHARD McLAURINE WOODRUFF,  ) | Case No.  04-63288 |
| ) | |
| Debtor. ) | |

## MEMORANDUM OPINION

The Chapter 7 trustee filed an objection to debtor Richard Woodruff's claim of a homestead exemption. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1).  The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I will overrule the trustee's objection as to the claim of exemption.

## FACTUAL BACKGROUND

Mr. Woodruff was an evangelical minister and missionary for the Church of God for 25 years. In 1987 he and his then-wife purchased a home in Bude, Mississippi, where they lived until approximately 1996. At that time Mr. Woodruff accepted a pulpit in Maryland, where he lived in the parsonage for five years. His mother moved into the house in Bude and occupied it during that time. Mr. Woodruff then accepted a pulpit in Pennsylvania and lived in housing provided by the church for one year.  He resigned from the church after leaving Pennsylvania. By then, he and his wife had separated, and his mother, who now required assisted living, could no longer live in the home in Mississippi.  Mr. Woodruff testified that

he intended to return to Bude when he left Pennsylvania, but he journeyed by way of Joplin, Missouri to obtain some counseling from a missionary friend who lived there. On May 17, 2004, the Circuit Court of Jasper County, Missouri entered a Judgment and Decree of Dissolution of Marriage dissolving the marriage of Richard and Mary Woodruff. The dissolution took place in Jasper County because, while in Joplin, Mr. Woodruff stated that he developed an acute back condition requiring hospitalization and intense physical therapy for a year. He was not medically able to return to Bude, so he leased his home there. In the Spring of 2003, Mr. Woodruff moved to Springfield, Missouri to continue his therapy. He was on public assistance for a time and applied for social security disability. His back condition, however, improved, and he was able to obtain a job at Bank One as a financial adviser. On December 21, 2004, he filed this bankruptcy petition. He claimed the home in Bude as his homestead with a value of $5,000.00. The trustee objected, and on March 30, 2005, this Court held a hearing. At the hearing, Mr. Woodruff stated that he always intended to return to Bude, that the home there is the only one he has ever owned, that his family all lives near that town, that he was delayed only because of his health, and that he now feels healthy enough to return. He said he would have moved sooner, but the current renters have refused to vacate the home. The trustee argues that Mr. Woodruff cannot claim a Missouri homestead exemption in real estate located in Mississippi. The trustee also objected to the claim of exemption on the basis that Mr. Woodruff committed fraud by undervaluing the real estate.

## DISCUSSION

I will begin with the issue of value. The trustee asked this Court to admit the Property Settlement Agreement, the answer to interrogatories in the dissolution proceeding, and a tax assessment for 2003 indicating that the real estate has a value ranging from $20,000.00 to $30,630.[1] Mr. Woodruff stated he believed the property to be worth $5,000.00. He stated that he valued the real estate in the dissolution proceeding to facilitate the divorce. He claims that he was awarded the real estate, but his former wife's name is still on the deed because she has never executed a quit claim deed. He testified that Bude is a town with a decreasing population and a surplus of housing. He stated that a home very near his home, but with more square footage, recently sold for $7,000.00. I find that Mr. Woodruff had a reasonable basis for valuing the property as he did in his schedules. I further find that the test of the property's value will be whether the trustee is able to sell it for an amount sufficient to pay the allowed homestead exemption, and realize a dividend for unsecured creditors after costs of the sale.

The dispositive issues here, then, are whether Mr. Woodruff always intended to return to his home in Bude, and whether Missouri's homestead exemption can be given extraterritorial effect. In Missouri a debtor is allowed to claim as exempt from the claims of creditors a homestead with a value of $15,000:

> 1. The homestead of every person, consisting of a dwelling house and appurtenances, and the land used in connection therewith, not exceeding the value of fifteen thousand dollars, which is or shall be used by such person as a homestead, shall, . . . be exempt from attachment and execution.[2]

---

[1] Tr. Ex. ## 2, 3, and 5.

[2] Mo. Stat. Ann. § 513.475 (Supp. 2005).

The debtor's physical removal from his residence, however, constitutes prima facie evidence of abandonment.[3] To rebut the presumption of abandonment, the debtor must demonstrate, through credible evidence, an intent to return.[4] Such an intent must have been formed at the time the debtor vacated the residence.[5] Conversely, a vague and indefinite intention to return at some future time under certain conditions is not sufficient to rebut the presumption of abandonment.[6] In *In re Maloney*,[7] the debtor, after her marriage, removed herself from her Missouri residence for 17 years.[8] Concluding that the debtor only demonstrated an intent to move back to her Missouri residence after her husband's death, the bankruptcy court held that debtor had abandoned her homestead in Missouri. The key fact was that the debtor could not demonstrate her intent to return to Missouri when she had left the state 17 years earlier.[9]

Mr. Woodruff's residence, therefore, qualifies as a homestead under Missouri law if he can demonstrate, through credible evidence, that he intended to return at the time he left the home. Mr. Woodruff testified that the home in Bude, Mississippi is the only home he has

---

[3]*Farris v. Farmington Production Credit Assoc. (In re Farris)*, 42 B.R. 388, 389 (E.D. Mo. 1984).

[4]*In re Schissler*, 250 B.R. 697, 400 (Bankr. W.D. Mo. 2000).

[5]*Id.*

[6]*Snodgrass v. Copple*, 111 S.W. 845, 846 (Mo. Ct. App. 1908).

[7]311 B.R. 525 (Bankr. W.D. Mo. 2004).

[8]The debtor acquired the residence in 1967 and lived in it for 20 years prior to her marriage in 1987. The debtor retained ownership of the residence during the next 17 years, and her son occupied the residence without signing a formal lease or paying rent.

[9]*Id.* at 528.

4

ever owned. He left it on a temporary basis to accept an interim position in Maryland. He then accepted another interim position in Pennsylvania. In each instance the parish provided housing for Mr. Woodruff and his wife. He testified that he was returning to Bude, but decided to visit a friend in Joplin, Missouri. While there he needed hospitalization for a chronic back ailment followed by a long period of rehabilitation. His marriage ended at this time. He moved to Springfield to continue his therapy. While in Springfield his back condition improved, he obtained a job, and he filed for bankruptcy relief. He testified that he did not think he would ever be able to work again, and he applied for Social Security Disability Income. Before he was approved, however, he began to improve. He stated that he now feels well enough to return to Bude. He is only awaiting the eviction of the current tenants. He has given them the notice required in the lease agreement, but they have refused to vacate the premises. No one contradicted Mr. Woodruff's testimony. The fact that he never purchased another home, never tried to market the home in Bude, and only rented the home after his mother could no longer live there evidences his intent to return at the time he left. I find that Mr. Woodruff did not abandon his residence in Bude, Mississippi in 1996, and that, at the time he moved away, and since, he intended to return. His residence, therefore, qualifies as a homestead under Missouri law.

The next issue is whether Missouri's homestead exemption applies to out-of-state property. The Bankruptcy Code (the Code) currently requires a debtor to claim the exemptions of the state where he has been domiciled for a minimum of 91 days out of 180 days prior to filing:

5

> (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate . . .
>
> . . .
>
> > (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place.[10]

Since Mr. Woodruff was living in Missouri for more than 180 days prior to his petition date, he was required to claim Missouri exemptions. The Code also permits a state to opt out of the federal bankruptcy exemption scheme.[11] The State of Missouri has exercised this option.[12]

Section 513.427 of Missouri's Revised Statutes provides that:

> Every person by or against whom an order is sought for relief under Title 11, United States Code, shall be permitted to exempt from property of the estate any property that is exempt from attachment and execution under the law of the state of Missouri or under federal law, other than Title 11, United States Code, Section 522(d), and no such person is authorized to claim as exempt the property that is specified under Title 11, United States Code, Section 522(d).[13]

Mr. Woodruff could, therefore, only choose the exemptions set forth under Missouri law. Nothing in the Missouri homestead statute limits its applicability to Missouri real estate.

---

[10] 11 U.S.C. § 522(b)(2)(A). *See also*, 28 U.S.C. § 1408 (this same restriction applies as to venue).

[11] 11 U.S.C. § 522(b)(1).

[12] Mo. Stat. Ann. § 513.427 (2002).

[13] *Id.*

6

Case 04-63288-abf7   Doc 16   Filed 04/28/05   Entered 04/28/05 13:13:18   Desc Main
Document      Page 7 of 9

In *Drenttel v. Jensen-Carter (In re Drenttel)*,[14] a debtor who filed for bankruptcy in Minnesota sought to apply Minnesota's homestead exemption to a residence located in Arizona. As here, Minnesota's homestead statute did not prohibit extraterritorial application.[15] In holding that such statute should be given extraterritorial effect in bankruptcy cases, the Eighth Circuit stated that "Congress used state-defined exemptions as part of a federal bankruptcy scheme, while limiting the application of state policies that impair these exemptions."[16]

Missouri's exemption laws are liberally construed in favor of the debtor.[17]  Since Missouri statutes and case law are silent in regards to the extraterritorial effect of Missouri's homestead exemption, and since Mr. Woodruff has proved his intent to return to Bude, Mississippi, I find that his Mississippi residence qualifies as a homestead under Missouri law.

An Order in accordance with this Memorandum Opinion will be entered this date.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: April 28, 2005

Copy to: Thomas J. O'Neal, Trustee
John M. Henderson, Jr., Attorney for Debtor

---

[14] 403 F.3d 611 (8th Cir. 2005).

[15] *Id.*

[16] *Id.* (pagination not yet avialable).

[17] *In re Maloney*, 311 B.R. 525, 527 (W.D. MO. 2004); *In re Schissler*, 250 B.R. 697, 700 (W.D. MO 2000); *In re Turner*, 44 B.R. 118, 119 (W.D. MO. 2000).

7